**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

ROZELLA J.,                                            Case No. 1:25-cv-13683

        *Plaintiff,*                              Patricia T. Morris
                                     United States Magistrate Judge

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

        *Defendant.*

_____/

**MEMORANDUM OPINION AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 14)**

## I.   CONCLUSION

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 13) is **DENIED**, the Commissioner of Social Security's motion for summary judgment (ECF No. 14) is **GRANTED**, and the decision of the administrative law judge (ALJ) is **AFFIRMED**.

## II.   ANALYSIS

### A.   Introduction and Procedural History

On January 31, 2023, Plaintiff filed applications for supplemental security income and disability insurance benefits, alleging disability beginning on September 18, 2021.  (ECF No. 7-1, PageID.41).  The Commissioner initially denied the

1

application on August 29, 2023, and on reconsideration on June 11, 2024. (*Id.*). Plaintiff then requested a hearing before an ALJ, which was held on November 20, 2024. (*Id.*). The ALJ issued a written decision on January 22, 2025, finding Plaintiff was not disabled. (*Id.* at PageID.41–50). Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied the request on September 19, 2025. (*Id.* at PageID.27–29).

Following the Appeals Council's denial of review, Plaintiff sought judicial review on November 19, 2025. (ECF No. 1). The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment and all post-judgment matters." (ECF No. 11). The parties have since filed cross-motions for summary judgment for which briefing is complete. (ECF Nos. 13, 14, 15).

### B.    Standard of Review

District courts have jurisdiction to review the Commissioner's final administrative decisions pursuant to 42 U.S.C. § 405(g). The review is restricted solely to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (citation modified). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th

Cir. 2007) (citation modified).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Id.* (citation modified).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability."  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

(i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any. If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.

(ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s). If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.

(iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s). If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.

(iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find that [the claimant is] not disabled.

(v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work. If [the claimant] can make an adjustment to other work, [the ALJ] will find that [the claimant is] not disabled. If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing his or her residual functional capacity (RFC), which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled. (ECF No. 7-1, PageID.50). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 18, 2021, the alleged onset date. (*Id.* at PageID.43). At step two, the ALJ found the following severe impairment: degenerative disc disease (DDD), lumbar and cervical spine. (*Id.* at

5

PageID.44).

At step three, the ALJ found the impairment did not meet or medically equal in severity or duration the criteria of any listing.  (*Id.* at PageID.44).  Next, the ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 6 hours, walking for 6 hours; and push/pull as much as she can lift carry.  The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds; balance occasionally; stoop occasionally; kneel occasionally; crouch occasionally; and crawl occasionally.  The claimant can never work at unprotected heights, in extreme cold occasionally, and in vibration occasionally.

(*Id.* at PageID.44–45).

At step four, the ALJ found Plaintiff could perform past relevant work as a Nordstrom sales associate/sales attendant.  (*Id.* at PageID.48–49).  Alternatively, at step five, the ALJ found other jobs in the national economy Plaintiff could perform. (*Id.*).  Specifically, the ALJ found Plaintiff could perform the requirements of a routing clerk (117,900 jobs in the national economy), a mail clerk (12,700), and a cleaner/housekeeper (177,700).  (*Id.* at PageID.49).  The ALJ thus concluded Plaintiff was "not disabled."  (*Id.* at PageID.50).

### E.    Administrative Record

Plaintiff raises one issue on appeal.  She argues the ALJ erred by failing to properly evaluate a medical opinion.  While the Court has reviewed the entire record,

it will only summarize the evidence relevant to Plaintiff's issue on appeal.

In September 2021, Plaintiff was admitted to the hospital after a motor vehicle collision where both cars were "going at a low rate of speed." (ECF No. 7-1, PageID.332, 351). She has complained of neck and back pain since the accident. (*Id.*). At the hospital, Plaintiff's strength and sensation were intact and equal in all extremities with satisfactory range of motion; she had discomfort on palpitation of her lumbar spine and diffuse midline tenderness of her neck. (*Id.* at PageID.351, 359; *see also id.* at PageID.617–18). An MRI showed mild spondylosis at C5–C6. (*Id.* at PageID.455, 462–63). She was diagnosed with "mild whiplash" and discharged. (*Id.* at PageID.352).

Plaintiff treated her pain with epidural steroid injections in her neck and back, seeing significant relief of 40%–60% of her pain. (*E.g., id.* at PageID.427, 931, 1291). A November 2021 exam showed tenderness and limited range of motion with a positive straight leg raise on the left side but otherwise normal gait and station. (*Id.* at PageID.455). Another exam around that time showed normal range of motion. (*Id.* at PageID.610). A physical exam after an injection in January 2022 showed some tenderness and limited range of motion but normal motor strength and tone and a smooth, regular gait while using a cane. (*Id.* at PageID.428).

Plaintiff also treated her pain with chiropractic appointments; although her spinal range of motion was decreased throughout treatment, the treatment was found

to be effective with a good prognosis. (*Id.* at PageID.467–69, 478–79, 485). At chiropractic appointments in 2023, Plaintiff generally reported her neck and back pain between 3–5/10 after several weeks of treatment, with some reports being a bit higher. (*Id.* at PageID.831–915).

In March 2022, Plaintiff reported that her neck pain was manageable unless she had to drive long distances and was only about a 2 or 3/10 on average. (*Id.* at PageID.968). She reported being concerned about sitting on a plane for 16 hours during a long flight to Africa. (*Id.*). In July 2022, Plaintiff reported headaches to her primary provider but no pain or weakness in her neck or back. (*Id.* at PageID.596). Objective testing showed a normal range of motion and no tenderness in her neck or back. (*Id.* at PageID.597).

At a February 2023 doctor visit, Plaintiff did not report any back or neck pain or headaches. (*Id.* at PageID.499). She had a normal range of motion and gait. (*Id.* at PageID.500, 706). An April 2023 MRI continued to show a small central disc protrusion at C5–C6; stable changes at L5–S1; stable disc protrusion at L4–L5 with moderate bilateral foraminal narrowing; and slight progression of spondylosis at L3–L4 without significant stenosis. (*Id.* at PageID.642, 648).

In August 2023, Plaintiff presented for a consultative examination with Nurse Stacey Gazan. (*Id.* at PageID.808–16). Plaintiff had weak grip strength, decreased range of motion, and was unable to tandem walk, squat, or stand on heels and toes.

(*Id.*).  She was able to get on and off the exam table, stand from a seated position, and maintain balance in a standing position without difficulty.  (*Id.* at PageID.812). Her muscles showed no signs of atrophy and her strength was 4/5 throughout.  (*Id.*). She had an antalgic gait but did not use an assistive device.  (*Id.* at PageID.813).

At several appointments in 2023, Plaintiff's had normal gait and stance while using a cane, some tenderness and limited range of motion, but her motor strength and tone were normal.  (*Id.* at PageID.923, 932, 954, 962, 969, 983, 1177, 1186, 1208, 1216, 1223, 1230, 1256).[1]  Physical therapy appointments in 2023 also showed decreased range of motion and somewhat decreased strength.  (*Id.* at PageID.1027–29, 1037, 1072–73).  Physical therapy helped her "feel quite a bit better," and objective tests showed her range of motion and strength generally increasing throughout treatment.  (*Id.* at PageID.1068, 1077, 1096, 1100, 1130, 1137–38, 1146, 1508, 1512, 1517).

In May 2024, Plaintiff was examined by Suma Thomas, DO.  (*Id.* at PageID.1295–1301).  Although she did not appear with a cane, Plaintiff reported being unable to do several of the tests due to pain, such as squatting and walking on heels and toes.  (*Id.* at PageID.1298).  Her back and neck range of motion were all within normal limits.  (*Id.* at PageID.1298–99).  Thomas stated she was unable to do a thorough physical examination due to reported pain but noted that Plaintiff "was

---

[1] Some of these records are duplicates.

seen leaving the facility without the same difficulty presented during the exam." (*Id.* at PageID.1300). Other evidence will be discussed below as necessary.

**F. Governing Law**

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources. An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed psychologist, which includes:

    (i) A licensed or certified psychologist at the independent practice level; or

    (ii) A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

10

(5) Qualified speech-language pathologist for speech or language impairments only.  For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only . . . ;

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice . . . .

20 C.F.R. § 404.1502(a) (2021).  A medical source is

an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d).  In contrast, a nonmedical source is "a source of evidence who is not a medical source."  *Id.* § 404.1502(e).  "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy."  *Id.*

The Social Security Administration (SSA) "will not defer or give any specific

11

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* § 404.1520c(a). "The most important factors [the SSA] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.* § 404.1520c(c).

The first factor is "supportability." For this factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with the claimant." *Id*. § 404.1520c(c)(3). This factor includes analysis of:

(i)   Length of the treatment relationship.   The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)   Frequency of examinations.   The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii)   Purpose of the treatment relationship.   The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)   Extent of the treatment relationship.   The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)   Examining relationship.   A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.

*Id.*

The fourth factor of the SSA's analysis is "specialization."   In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

*Id.* § 404.1520c(c)(4).

13

Finally, the SSA will consider "other factors." These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* § 404.1520c(b)(1). The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2). As such, the SSA

> will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision. [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3). The regulations clarify that the SSA is "not required to articulate how [it] considered evidence from nonmedical sources using the requirements of

paragraphs (a)–(c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c).  The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities"; "[d]isability examiner findings," meaning "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled"; and "[s]tatements on issues reserved to the Commissioner[,]" including

(i)  Statements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work;

(ii)  Statements about whether or not [the claimant has] a severe impairment(s);

(iii)  Statements about whether or not [the claimant's] impairment(s) meet the duration requirement . . . ;

(iv)  Statements about whether or not [the claimant's] impairment(s) meets or medically equals any listing in the Listing of Impairments . . . ;

(v)  Statements about what [the claimant's] residual functional capacity is using [the SSA's] programmatic terms about the functional exertional levels . . . instead of descriptions about [the claimant's] functional abilities and limitations . . . ;

(vi)    Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work . . . ;

(vii)    Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule . . . ; and

(viii)    Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review.

*Id.* § 404.1520b(c)(3).

The regulations also provide that

[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504.   Therefore, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.*  The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim . . . ." *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f).  Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed,

apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g).  Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.*  Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," which "include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain:

> In determining whether [the claimant is] disabled, [the SSA will] consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  [The SSA] will consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work.

*Id.* § 404.1529(a).  But the SSA clarified that

statements about [the claimant's] pain or other symptoms will not alone

establish that [the claimant is] disabled.   There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.*   Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.*  The SSA will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it] will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3).  This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or

19

aggravate [the claimant's] symptoms, what medications, treatments or other methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of [the claimant's] symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons.

*Id.* Factors relevant to a claimant's symptoms, such as pain, include:

> (i)   [D]aily activities;
>
> (ii)  The location, duration, frequency, and intensity of . . . pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
>
> (v)   Treatment, other than medication, . . . received for relief of . . . pain or other symptoms;
>
> (vi)  Any measures . . . used to relieve . . . pain or other symptoms.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get

benefits, [the claimant] must follow treatment prescribed by [his or her] medical source(s) if this treatment is expected to restore [his or her] ability to work." *Id.* § 404.1530(a). Stated differently, "[i]f [the claimant does] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled or, if [the claimant is] already receiving benefits, [the SSA] will stop paying . . . benefits." *Id.* § 404.1530(b). Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)    The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;

(2)    The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)    Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)    The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or

(5)    The treatment involves amputation of an extremity, or a major part of an extremity.

*Id.* § 404.1530(c).

## G. Argument and Analysis

As stated above, Plaintiff argues the ALJ erred by failing to properly evaluate Nurse Gazan's medical opinion.

As a refresher, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  An ALJ must explain his or her approach with respect to supportability and consistency when considering a medical opinion.  *Id*. § 404.1520c(b).   For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).  For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). Importantly,

> The new regulation substantially reduces the ALJ's obligation to explain the basis for his or her assessment of medical opinions:
>
>> [Source-level articulation.]  Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record.  Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how

22

> we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

*Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (quoting 20 C.F.R. § 404.1520c(b)(1)); *see also Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. 2022) ("Even for a medical opinion, there is no requirement to cite to every piece of evidence or conclusion.").

Plaintiff argues the ALJ's reasoning, block-quoted below, inadequately discussed the supportability and consistency factors in rejecting Nurse Gazan's opined limitations:

> On August 14, 2023, the claimant presented to Stacey Gazan, RN for a consultative evaluation, at which time the claimant complained of chronic lower back and neck pain. A physical exam performed at that time revealed no evidence of atrophy, slightly reduced strength in the extremities, intact sensation, and an antalgic gait but with no use of an assistive device. At that time, the claimant was unable [to] squat due to back pain, and she had severely reduced lumbar range of motion and severely reduced right grip.

> . . .

> On August 14, 2023, Provider Gazan opined the claimant could only lift 4 pounds, and only sit, stand, or walk 5 mins. These limitations are dramatic and implausible and appear to stem from the claimant's self-reported limitations. Furthermore, such limitations are inconsistent with other medical evidence in the record which indicated the claimant

23

mostly maintained a normal gait as well as normal strength in the extremities, normal muscle tone, normal grip strength, and normal sensation. While the claimant's physical functioning would be limited by her chronic back pain and reduced range of motion in the lumbar and cervical spine, such physical deficits would not cause such significant reductions in the claimant's physical functioning. Instead, the record supports an ability to perform at least light work consistent with the assigned residual functional capacity. Accordingly, Provider Gazan's opinion is not persuasive.

(ECF No. 7-1, PageID.46–48 (internal record citations omitted)).

Plaintiff first argues the ALJ's assessment of the supportability of Gazan's opinion is completely absent. (ECF No. 13, PageID.1539). But, although the ALJ did not use the word "supportability" in his analysis, that does not mean he did not consider the factor. *See Cormany v. Kijakazi*, No. 21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) ("[A]n ALJ need not specifically use the terms 'supportability' or 'consistency' in his analysis.") (collecting cases). Instead, the ALJ must "provide a coherent explanation of [his or] her reasoning" and "set forth a minimum level of articulation" such that the reviewing court can determine whether the disability determination was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. Aug. 13, 2021) (citation modified). Here, although the ALJ's analysis was brief in the section Plaintiff focuses her argument on, the ALJ provided the minimal level of articulation required when his decision is read as a whole. *Mark D. v. Comm'r of Soc. Sec.*, No. 24-cv-166, 2025 WL 1656639, at *8 (E.D. Ky. June 11, 2025) ("The ALJ's

24

explanation as to persuasiveness does not need to be lengthy, and there is no requirement that an ALJ discuss each limitation from an opinion that he adopts, or fails to adopt, when he has rejected or adopted the opinion on broader grounds." (citation modified)).

The ALJ found Gazan's limitations that Plaintiff could only lift 4 pounds, and only sit, stand, or walk for 5 mins were "dramatic and implausible and appear to stem from the claimant's self-reported limitations." (ECF No. 7-1, PageID.47). In making this finding, the Court considers that the ALJ had already discussed Gazan's objective tests, noting that Gazan's physical exam showed no atrophy, only slightly reduced strength in the extremities, intact sensation, and an antalgic gait with no use of an assistive device. (*Id.* at PageID.46). The ALJ also acknowledged Plaintiff had been unable to squat due to pain and had a severely reduced lumbar range of motion and right grip. (*Id.*). Nevertheless, as to Gazan's opinion, the ALJ ultimately concluded that "[w]hile the claimant's physical functioning would be limited by her chronic back pain and reduced range of motion in the lumbar and cervical spine, such physical deficits would not cause such significant reductions in the claimant's physical functioning." (*Id.* at PageID.47). Thus, the ALJ specifically discussed Gazan's objective findings and found that her opinion was not supported by them. He accounted for Gazan's findings of a limited range of motion and chronic pain but otherwise found that Gazan's "dramatic" limitations were likely based on Plaintiff's

25

self-reports.  *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) ("[A] doctor's report that merely repeats a patient's assertions about her [disability] is not objective medical evidence." (citation omitted)); *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) ("Dr. Killefer's pain-related statement, on the other hand, is not a 'medical opinion' at all—it merely regurgitates Francis's self-described symptoms.").  This discussion of Gazan's opinion, which was not fully supported by her clinical findings, was sufficient.  *Crum v. Comm'r Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record.  But it suffices that she listed them elsewhere in her opinion.").

Plaintiff then cites to the same facts the ALJ considered (ECF No. 13, PageID.1540–41) and merely asks this Court to reweigh them, which it is not permitted to do.  *See Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. 2022) (holding plaintiff's arguments regarding the supportability and consistency factors were "veiled attempts" to circumvent the substantial evidence standard and are "classic examples of invitations to reweigh the evidence and to find other medical opinions more persuasive").  Instead, she must show the ALJ's opinion was not supported by substantial evidence.  True, the evidence could lead reasonable people to different conclusions regarding Plaintiff's abilities, but it is not this Court's job to offer its own conclusions but instead to

26

review whether the ALJ's conclusions are supported by substantial evidence. *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025).  The ALJ discussed the objective evidence supporting Gazan's opinion and found that, although the evidence would account for some limitations, the full range of limitations Gazan opined were necessary was not plausible.  He supported his conclusions with substantial evidence.

Plaintiff next argues the ALJ's discussion of the consistency factor is insufficient.  (ECF No. 13, PageID.1542).  Specifically, she argues the ALJ's broad citations to the record are insufficient.  But

> [t]he fact that the ALJ did not repeat or specifically cite to contrasting medical records when evaluating Dr. Chang's opinion, and instead more generally referenced the record as a whole, is sufficient because the ALJ's decision is to be read as a whole. *See, e.g., Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 970 (6th Cir. 2021) (the ALJ's brief explanation discounting a medical opinion, in conjunction with the ALJ's discussion of the doctor's treatment notes and exam findings elsewhere in the decision, satisfied the articulation requirement for opinion evidence).

*Hamm v. Comm'r of Soc. Sec.*, No. 25-cv-423, 2025 WL 3187084, at *6 (N.D. Ohio Nov. 14, 2025), *report and recommendation adopted*, 2025 WL 3687383 (N.D. Ohio, Dec. 19, 2025).

Plaintiff's argument again amounts to an impermissible request to reweigh the evidence.  For example, she cites to numerous places in the record where she was noted to be using a cane while ambulating.  But the ALJ also noted numerous places

27

where she appeared for appointments with a normal gait and not using a cane. Further, the ALJ specifically discussed whether the medical evidence showed the necessity of an assistive device.  (ECF No. 7-1, PageID.44, 47).  *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) ("[W]hen the ALJ is presented with the not uncommon situation of conflicting medical evidence the trier of fact has the duty to resolve that conflict.  Our job is only to ensure that the Commissioner's determination is supported by substantial evidence." (citation modified)).  Plaintiff does not challenge this finding and has thus waived it.  *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006).

Plaintiff then argues the ALJ failed to acknowledge that Gazan's opinion was consistent with other medical opinions.  But the ALJ found the other medical opinion unpersuasive as well.  "It would be a perversion of social security law to fault an ALJ for failing to credit two *unsupported* medical source opinions because they were *consistent* with each other."  *Rattliff v. Comm'r of Soc. Sec.*, No. 10-cv-1732, 2021 WL 7251036, at *10 (N.D. Ohio Oct. 29, 2021) (emphases in original), *report and recommendation adopted*, 2022 WL 627055 (N.D. Ohio Mar. 3, 2022).

Even if substantial evidence could support the limitations Plaintiff alleges are necessary, substantial evidence also supports the ALJ's determinations.  Therefore, Plaintiff's motion for summary judgment is denied.

## III.   <u>ORDER</u>

For these reasons, Plaintiff's motion (ECF No. 13) is **DENIED**, the Commissioner's motion (ECF No. 14) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: July 28, 2026                          S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge